**Mike HONEY and Martha Allen,**
**Appellants,**

v.

**Jon GOODMAN, Shelby M. Howard, and**
**J. W. Shines, Appellees.**

**No. 20314.**

United States Court of Appeals,
Sixth Circuit.

Oct. 9, 1970.

Robert Sedler, Lexington, Ky., for appellants, William H. Allison, Lexington, Ky., Robert E. Delahanty, Louisville, Ky., on brief.

Robert D. Simmons, Bowling Green, Ky., for appellees, Allender, Simmons & Robertson, Bowling Green, Ky., on brief.

Before CELEBREZZE, Circuit Judge, O'SULLIVAN, Senior Circuit Judge, and KALBFLEISCH, District Judge.*

CELEBREZZE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Western District of Kentucky dismissing a complaint filed by Mike Honey and Martha Allen, members of the Kentucky Chapter of the Southern Committee Against Repression, against Jon Goodman, Shelby M. Howard, and J. W. Shines, the county attorney for Hart County, Kentucky, the Commonwealth attorney for the Tenth Judicial District of Kentucky, and the Jailer of Hart County, Kentucky, respectively. The complaint was dismissed sua sponte, on the court's own motion, and without a

* Honorable Girard E. Kalbfleisch, United States District Court for the Northern District of Ohio, Eastern Division, sitting by designation.

hearing. The complaint sought the convocation of a three-judge district court to declare the Kentucky common law offense of embracery unconstitutional, 28 U.S.C. §§ 2281 & 2284 (1964), and an injunction against a state court proceeding pending against the Appellants for violation of the law by mailing letters to certain residents of Hart County, Kentucky during the pendency of a criminal prosecution of six individuals implicated in the Louisville race riots of 1968, 42 U.S.C. § 1983 (1964). The District Court dismissed the complaint on its belief that the federal anti-injunction statute, 28 U.S.C. § 2283 (1964), left it powerless to grant the injunctive relief prayed for. Jurisdiction of the District Court had properly been invoked under 28 U.S.C. § 1343(3) & (4) for the alleged violations of 42 U.S.C. § 1983 (1964). Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The complaint raises issues hitherto undecided by this Court or the United States Supreme Court under sections 2283 and 1983. For the reasons that follow, we reverse.

■ This cause having come before this Court on a dismissal, the allegations of the complaint must be taken as true, and any legitimate inferences arising therefrom must be construed in favor of the Appellants. *See* Jenkins v. McKeithen, 395 U.S. 411, 423–424, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); Taylor v. Kentucky State Bar Association, 424 F.2d 478, 480 (6th Cir. 1970). The complaint states that on January 1, 1970, the Appellants, in their capacities as coordinators of the Kentucky Chapter of the Southern Committee Against Repression, sent letters to some 1200 residents of Hart County, Kentucky, whose names were listed in the Hart County Telephone Directory. The letter protested the fact that the trial of six individuals on charges of conspiring to destroy private property during Louisville's civil disorders in May 1968, had been transferred from Louisville (Jefferson County) to Hart County,

as a result of prejudicial pre-trial publicity. The letter provided:

[Dated] January 1, 1970

To: Citizens of Hart County

Dear Friends,

On January 5 [1970] six black people from Louisville are being brought to trial in Hart County. The State claims that these people caused the Louisville uprising of '68. This is a lie.

The prosecutor in Louisville knows he doesn't have evidence for a conviction, and that is why he is dumping this case on you. He seems to think that the citizens of Hart County will convict these six people without any evidence.

Many people in Louisville are angry about this prosecution. They are angry because City and State officials are trying to make scapegoats of these six people. These officials are trying to make fools of you by moving the case from Louisville to Munfordville.

Don't be fooled. The same problems that exist in Jefferson County exist in Hart County, and they will not be solved by such shenanigans. The politicians are trying to jail these six people because they spoke up about unemployment, bad housing, poverty and racism. If they can be jailed for speaking their minds, so can you.

The politicians are trying to make fools of all of us. They tell us that social problems are our fault—not theirs. They try to use the race question to keep black and white divided. We are angry about all of this. We hope you are angry too. Enclosed is a folder about some of the things we are doing to protest this injustice. We urge you to protest against this trial being pushed off on you.

> Yours very truly,
> [signed] Mike Honey & Martha Allen
>
> Mike Honey and Martha Allen Coordinators, Kentucky Chapter Southern Committee Against Repression

On January 5, 1969, the opening day of the January Term of the Hart County Circuit Court, the Circuit Judge stated to a Grand Jury which had been convened that the sending of this letter constituted a "heinous crime." He stated that the sending of the letter constituted the common law offense of embracery which the Appellees Goodman and Howard would explain to the Grand Jury. Finally, he stated that "he would find out who was responsible for the sending of the letter even if this necessitated the cooperation of the United States Post Office." Following this instruction to the Grand Jury, the Circuit Judge stated that he would return the case of the "Black Six" to Jefferson County as a result of the sending of the letters. Appellee Goodman, the county attorney, publicly stated to the press that he would seek criminal indictments against the signers of the letters.

At the time the letters were sent, no date for the trial of the "Black Six" had been set, and members of the petit jury for the January term of the Hart Circuit Court had not been selected.

On January 7, 1970, the Hart County Grand Jury returned an indictment charging the common law offense of embracery against the Appellants. The indictment stated:

> "On or about January 1, 1970, in Hart County, the above-named defendants [Appellants] caused to be delivered a letter designed to unlawfully harass, corrupt, predudate [sic], intimidate or otherwise improperly influence citizens of Hart County, Kentucky, namely Harold Glenn Wilson, Shirley Stewart, H. B. Gaddock, Henry Daniels, who had been summoned to be a member [sic] of the Circuit Court Jury Panel, a portion of which would hear and decide the guilt or innocence of the defendants known as * * * [the "Black Six"] against the peace and dignity of the Commonwealth of Kentucky."

On January 20, 1970, the Appellants filed suit in the District Court to enjoin their prosecutions under the indictment.

In its essentials, the complaint makes two claims. First, it alleges that the Kentucky common law offense of embracery is unconstitutional on its face and as applied against them. Second, the complaint alleges that the prosecutions for embracery were instituted in bad faith, with no real hope of ultimate success, for the sole purpose of deterring, intimidating, harassing, and punishing the Appellants for their expression of unpopular ideas, and to prevent the Appellants and discourage others, in the future, from exercising their First Amendment right "to criticize the administration of justice."

◼ In their first claim for relief, the Appellants requested that a three-judge district court be convened to issue a declaratory judgment with respect to the constitutionality of the Kentucky common law misdemeanor of embracery. The District Court's refusal to grant this "extraordinary" relief was justified if their claim did not raise a "substantial constitutional question." Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Taylor v. Kentucky State Bar Association, 424 F.2d 478, 480 (6th Cir. 1970) and cases cited therein.

◼ The Kentucky Court of Appeals has, apparently, discussed the crime of embracery in only two reported decisions. Brown v. Beauchamp, 21 Ky. Law Rep. 268, 269 (1827); Commonwealth v. Denny, 235 Ky. 588, 31 S.W.2d 940 (1930). In the first of these, the court defined the crime as:

> "where one attempts to corrupt, or influence, or instruct a jury, or any way to incline them to be more favorable to the one side or the other, by money, letters, promises, threats, or persuasions, except only by the strength of evidence, and the arguments of counsel in open court at the trial of the cause." Brown v. Beauchamp, supra, 21 Ky.Law Rep. at 269.

In the second of these cases, the court purportedly broadened the reach of the crime by defining "jury," or "jurors,"

as persons who may have been selected for jury duty, as, for example, by having their names drawn from a jury wheel, but who have not been impaneled or sworn to serve on any particular case. Commonwealth v. Denny, *supra*, 31 S. W.2d at 942.[1] Assuming, without deciding, that Commonwealth v. Denny does expand the common law of embracery to include prejudicial conduct towards *prospective* jurors, the infirmity of the indictment in that case is not present in the instant case: at least one of the four individuals named in the indictment as having received the letter mailed by the Appellants had been summoned for jury service for the January Term of the Hart County Circuit Court.

■ The Appellants argue that they may not be punished by the Commonwealth of Kentucky for their expression of controversial ideas in a manner akin to "pure speech." We disagree. Although the First and Fourteenth Amendments forbid the making of any law "abridging the freedom of speech, or of the press," states may punish for embracery by letter, or any other crime applicable to the exercise of pure speech, where it is proven that the "words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about" substantive evils that the states have a right to prevent. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919). One of the substantive evils states have a right to regulate is a threat to their administration of justice. Bridges v. California, 314 U.S. 252, 271, 62 S.Ct. 190, 86 L.Ed. 192 (1941). See Sheppard v. Maxwell, 384 U.S. 333, 349–352, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1962). We find that the

Kentucky common law crime of embracery is constitutional on its face, that it is neither overly broad, Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967), nor so vague that men of common intelligence must necessarily guess at its meaning, Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). The question whether it is constitutional as applied to the facts of this case will be considered below.

■ Finding the common law offense constitutional on its face we hold that the District Court did not err in refusing to convene a three-judge panel under 28 U.S.C. §§ 2281 & 2284 (1964) to declare its unconstitutionality.

We now turn to the question whether the District Court had power under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1964), either notwithstanding the federal anti-injunction statute, 28 U.S.C. § 2283 (1964), or by virtue of an exception to it, to issue an injunction against the state court prosecution pending against the Appellants. Section 2283 sharply limits federal courts' power to enjoin state court proceedings after return of an indictment:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The United States Supreme Court has not decided the question whether the anti-injunction statute is a bar to injunctive relief where a plaintiff states and proves a claim under the theory of

---

1. This apparent extension of the law in Commonwealth v. Denny was not necessitated by the facts of the case. In that case, the court dismissed an indictment that had been returned against Denny, a criminal defense lawyer, for attempting to bribe Driskill, who was not a juror, and had not been selected for jury service. The bribe was to induce Driskill to hang the jury that would be impaneled to try Denny's client, who was accused of murder, if Driskill were selected for jury service, and in the event of an otherwise unfavorable verdict against Denny's client. In neither of the cited cases, nor in any others that we have found, has the Court of Appeals of Kentucky upheld a conviction for embracery.

Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and where the state court proceeding was underway. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965); Dombrowski v. Pfister, *supra*. Although state court prosecutions had been either threatened or imminent in each case in which the Supreme Court granted *Dombrowski* relief, in none had the prosecution actually been instituted. The Supreme Court has recently heard reargument in four cases involving the issue we must now decide. *See* Fernandez v. Mackell, 288 F.Supp. 348 (S.D.N.Y.), prob. juris. noted, 393 U.S. 975, 89 S.Ct. 453, 21 L.Ed.2d 437 (1968) (No. 813, 1968 Term; renumbered No. 20, 1969 Term); Samuels v. Mackell, 288 F.Supp. 348 (S.D.N.Y.), prob. juris. noted, 393 U.S. 975, 89 S.Ct. 453, 21 L.Ed.2d 437 (1968) (No. 580, 1968 Term; renumbered No. 11, 1969 Term); Harris v. Younger, 281 F.Supp. 507 (C.D.Cal. 1968), prob. juris. noted, 393 U.S. 1013, 89 S.Ct. 611, 21 L.Ed.2d 558 (1969) (No. 163, 1968 Term; renumbered No. 4, 1969 Term); Landry v. Daley, 288 F.Supp. 200 (N.D.Ill.), prob. juris. noted, Boyle v. Landry, 393 U.S. 974, 89 S.Ct. 442, 21 L.Ed.2d 436 (1968) (No. 244, 1968 Term; renumbered No. 6, 1969 Term). 38 U.S.L.W. 3429–3430, 3432, 3521 (U.S. 1970). The decisions of the Circuit Courts of Appeals are divided on the issue. *Compare,* Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970), noted in 48 Texas L.Rev. 506 (1970) (holding that section 2283 is merely a codification of the judicial comity doctrine, and must give way in the presence of threatened irreparable injury to First Amendment rights as a result of a bad-faith state prosecution); *with* Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), cert. denied, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965) (holding that section 1983 is not

an "express exception" to section 2283). *See also,* Stevens v. Frick, 372 F.2d 378, 381–382 (2d Cir. 1967), cert. denied, 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973; Note, The Dombrowski Remedy—Federal Injunctions Against State Court Proceedings Violative of Constitutional Rights, 21 Rutgers L.Rev. 92 (1966); P. Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv.L.Rev. 1352 (1970); Note, Federal Removal and Injunction to Protect Political Expression and Racial Equality: A Proposed Change, 57 Cal. L.Rev. 694, 704–709 (1969); Note, The Federal Anti-Injunction Statute and Declaratory Judgments In Constitutional Litigation, 83 Harv.L.Rev. 1870 (1970); C. Warren, Federal and State Court Interference, 43 Harv.L.Rev. 345, 375 (1930). This Court has rendered no decision subsequent to *Dombrowski* on the question, Taylor v. Kentucky State Bar Association, 424 F.2d 478 (6th Cir. 1970); *see* Sexton v. Barry, 233 F.2d 220, 223–224 (6th Cir. 1956), and, predictably, the decisions of the lower courts within this Circuit are in discord. *Compare, e. g.,* Brooks v. Briley, 274 F.Supp. 538 (M.D.Tenn.1967) (three-judge court), aff'd per curiam, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968) (holding that section 2283 bars not only federal injunctions against pending state court proceedings, but also declaratory judgments); Armstrong v. Ellington, 312 F.Supp. 1119 (W.D.Tenn. 1970) (three-judge court) (holding that section 1983 is not an "express exception" to section 2283); *with,* Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. 1967) (three-judge court) (holding that section 1983 is an "express exception" to section 2283). *See also,* Wells v. Hand, 238 F.Supp. 779 (D.Ga.1965), aff'd per curiam, Wells v. Reynolds, 382 U.S. 39, 86 S.Ct. 160, 15 L.Ed.2d 32; Zwicker v. Boll, 270 F.Supp. 131 (D. Wis.1967), aff'd per curiam, 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (Douglas, J. dissenting).

 Section 1983, the Civil Rights Statute, provides that every person who causes a citizen of the United States to

be deprived of his rights under the federal Constitution and laws "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." This statute authorizes the issuance of federal injunctions, in highly unusual and limited circumstances, to protect the exercise of civil rights. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). We must resolve the apparent conflict between section 1983 and section 2283 in *Dombrowski* cases where the state court proceedings have begun. As this is, essentially, a problem in statutory construction, we must first examine the histories and purposes of the statutes in conflict.

*The anti-injunction statute.* The background and purpose of this statute are enigmatic. The statute was originally enacted in 1793, for reasons which remain obscure. *See* Act of March 2, 1793, c. 22, § 5, 1 Stat. 334. There was no recorded legislative history, and modern courts have appeared to grope at its original purpose and function. *Compare,* Toucey v. New York Life Insurance Company, 314 U.S. 118, 130–132, 62 S.Ct. 139, 86 L.Ed. 100 (1941), *with,* Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). *See generally,* Durfee & Sloss, Federal Injunction Against Proceedings in State Courts: The Life History of a Statute, 30 Mich.L.Rev. 1145 (1932). The original section forbade federal injunctions against state court proceedings under any circumstances. In 1875, Congress engrafted an express exception to the provisions, allowing federal injunctions in cases arising under federal bankruptcy laws which, themselves, were expressly excepted from the statute. Rev.Stat. § 720 (1875); *later becoming* 28 U.S.C. § 379 (1911). Often regarding the statute as a mere restriction on its equitable powers, the Supreme Court engrafted several judicial exceptions on top of one enacted by Congress. *See* Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67

L.Ed. 226 (1922) (federal injunction appropriate where it first acquires jurisdiction over the *res* in in rem actions); Simon v. Southern Railway Company, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492 (1915) (federal injunction available to prevent enforcement of a state court judgment obtained by fraud or without service); Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (federal injunction available to prevent re-litigation by state courts of federal discharge in bankruptcy). *See also,* Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123 (1893); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Wells Fargo & Company v. Taylor, 254 U.S. 175, 41 S. Ct. 93, 65 L.Ed. 205 (1920).

In 1941, in the case of Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, Mr. Justice Frankfurter, speaking for the Court, erased all the judicially-created exceptions to section 379, the predecessor of section 2283. "Loose language and a sporadic, ill-considered decision," wrote Justice Frankfurter, "cannot be held to have imbedded in our law a doctrine which so patently violates the express prohibition of Congress." *Toucey, supra,* 314 U.S. *at* 139, 62 S.Ct. *at* 147.

In 1948, in response to the *Toucey* decision, Congress enacted the present anti-injunction statute. Its purpose: to "restore the basic law as generally understood and interpreted prior to the Toucey decision." Revisory committee note, *reprinted following text of* 28 U.S. C. § 2283 (1964).

Three cases arising after the 1948 revision illustrate the continuing uncertainty in section 2283's application. In Amalgamated Clothing Workers of America v. Richman Brothers Company, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955), a corporation sued in an Ohio state court to enjoin a union from picketing its property, alleging that the union's conduct constituted an unlawful conspiracy and restraint of trade under state law. The union brought suit in a federal court to enjoin the state court

proceeding on the ground that the subject matter of the action was within the exclusive jurisdiction of the NLRB, and that the state court had no jurisdiction to proceed. The Supreme Court, per Mr. Justice Frankfurter, affirmed the district court's denial of the injunctive relief prayed for. Holding that the Taft-Hartley Act was no exception to section 2283, and that, therefore, no federal injunction could issue, the Supreme Court stated:

> "By that enactment [section 2283], Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial 'improvisation.'" 348 U.S. at 514, 75 S.Ct. at 454.

> "This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." 348 U.S. *at* 516, 75 S.Ct. *at* 455.

Two years after *Amalgamated,* in Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), the petitioner filed a state court action against several mineral lessees of the United States, seeking a declaration that it was the owner of the mineral rights and entitled to an accounting of the minerals removed by the lessees of the United States. The United States then brought suit against the petitioner and others in the district court to quiet title in the mineral rights, and to enjoin the petitioner from prosecuting its action in the state court. The Supreme Court affirmed the granting of the injunction by the district court, finding section 2283 "inapplicable" to stays sought by the United States, even though section 2283 contained no such exception on its face. Again speaking for the Court, Mr. Justice Frankfurter stated:

> "The statute [section 2283] is designed to prevent conflicts between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be so great that we cannot impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone. It is always difficult to feel confident about construing an ambiguous statute when the aids to construction are so meager, but the interpretation excluding the United States from the context of the statute seems to us preferable in the context of healthy federal-state relations." 352 U.S. *at* 225–226, 77 S.Ct. at 290, 291.

Thus, whereas in 1955 the Supreme Court found that by section 2283 "Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation," in 1957 the basic ambiguity of the section was emphasized. More importantly, the Court enunciated a new, judicially-created exception to section 2283: that of preventing "threatened irreparable injury to a national interest" and "the frustration of superior federal interests."

In its latest pronouncement on section 2283, the Supreme Court reinstated much of the theory it applied in *Amalgamated Clothing Workers, supra,* and refused to revive a "relitigation" exception to section 2283 which was abolished by *Toucey.* Speaking for the Court, Mr. Justice Black stated:

> "The respondent here has intimated that the Act establishes only a 'principle of comity,' not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. * * *

[S]ince the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286–287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (U.S. June 8, 1970).

While protesting that the Act does not establish "only a 'principle of comity' ", the Court proceeded to define the Act's purpose in the same language that has traditionally been used to define the judicial doctrines of comity and abstention: "to prevent needless friction between state and federal courts." *Id.* at 286, 90 S.Ct. at 1743. *Compare, e. g.*, Harrison v. NAACP, 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959) (abstention) ("avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns") ; *and,* Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950) (comity) ("potential conflict between state and federal courts"). Note, The Federal Anti-Injunction Statute and Declaratory Judgments in Constitutional Litigation, 83 Harv.L.Rev. 1870, 1874–75, n. 24, 25 (1970).

■ Thus, while the decisions of the Supreme Court and its obscure legislative histories reveal little of the statute's real purpose and effect, it now seems reasonably clear that the Act is not "only" a principle of comity, and must be applied liberally, to prevent "needless" friction between the state and federal courts. Nevertheless, under certain exigent circumstances, the Act may be held not to apply to bar federal injunctive relief, Leiter Minerals, Inc. v. United States, *supra,* or a federal statute under which the injunction is sought will be found to fit into one of the three "express exceptions" to section 2283.

■ *The Civil Rights Act.* In marked contrast to that of section 2283, the scope of section 1983 jurisdiction has been clearly defined. Originally enacted to execute the Fourteenth Amendment, section 1983 provides a federal legal or equitable remedy for abuses by state officials in matters of personal rights protected by the federal Constitution or laws. Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ; Zwickler v. Koota, *supra,* 389 U.S. *at* 248, 88 S.Ct. 391. Under *Dombrowski* and its progeny, threatened or imminent bad-faith prosecutions by illegally motivated state officials, brought for the purpose of suppressing First Amendment rights under valid laws, must be enjoined. Taylor v. Kentucky State Bar Association, 424 F.2d 478, 480 (6th Cir. 1970).

It is clear that section 1983 was, to some degree, designed to alter the balance of power between state and federal courts insofar as certain important federal rights are concerned. Passed by a Reconstruction Congress, its very purpose was to protect the rights of freedmen against abusive conduct by state officials.

"In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ' * * * to guard, enforce, and protect every right granted or secured by the Constitution of the United States. * * *' 'We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdic-

tion simply because the rights asserted may be adjudicated in some other forum.' " [Citations Omitted.] Zwickler v. Koota, 389 U.S. 241, 248, 88 S. Ct. at 395 (1967).

We need not, and do not, decide that section 1983 is an "express exception" to section 2283 under all circumstances. We do find, however, that where the "highly unusual and very limited circumstances" of *Dombrowski* are plead and proved, the frustration of superior federal interests that would ensue from precluding an aggrieved citizen from obtaining a stay of state court proceedings would be so great as to pose a threat of irreparable injury to a national interest. P. Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv.L.Rev. 1352 (1970).

"Speech is an evanescent thing. To be effective it must be timely. And that, in essence, is why a mere prosecution may itself destroy it and why the 'strong medicine' of *Dombrowski* is available to save it."

"If there is any right, asserted by private parties, the preservation of which amounts to a compelling national interest, it is the freedom of speech." Sheridan v. Garrison, 415 F.2d 699, 707 (5th Cir. 1969).

Where a bad-faith state prosecution is threatened or imminent, or where it has technically "begun" by return of an indictment, the very concept of federalism has eroded. To enjoin the proceedings at that point, rather than permit state courts to be used as instrumentalities for the suppression of unpopular ideas, would minimize *existing* federal-state friction, not "needlessly" generate it.

The plaintiffs in *Dombrowski* were able to avoid the prohibition of section 2283 because, in advance of their prosecution, the state prosecutor publicly announced his intentions, and they were able to file their federal petition before he commenced the state action. In the normal course of events, however, prosecutors do not broadcast their plans in advance, and civil rights advocates find themselves as defendants in a state pros-

ecution before federal injunctive relief can be sought. We cannot reasonably envision the important remedy provided by section 1983 under *Dombrowski* as requiring "a race between the prosecutor and his intended victims to the state and federal court respectively, with the victor getting all the spoils." Note, *supra,* 21 Rutgers L.Rev. 92, 124–129 (1966); Sheridan v. Garrison, 415 F.2d 699, 707 (5th Cir. 1969). Surely the Supreme Court did not intend that federal protection of federal rights would depend upon such a race to the courthouse.

■ In so holding, we emphasize that we decide only the case presently before us. We believe that section 1983 provides federal injunctive relief in meritorius *Dombrowski* cases where the state prosecution has been instituted, but limit this decision to those First Amendment cases where it is alleged that the prosecution itself, as opposed to a possible conviction and punishment, results in a "chilling effect" of a kind similar to that described in *Dombrowski;* where the proceeding may technically be under way, but not where the state trial of the accused has begun; and solely where the only effective protection available is by way of federal injunction. *See* Sheridan v. Garrison, *supra,* 415 F.2d *at* 708.

■ We now consider the Appellants' second claim for relief. Their basic allegation is that the Kentucky common law offense of embracery is being enforced against them in bad faith, selectively, with no real hope of ultimate success, for the sole purpose of punishing them, and discouraging others, from exercising their freedom of speech. This allegation, which must be accepted as true for the purposes of this appeal, states a claim for relief under section 1983 and *Dombrowski.* Finding, as we have, that the District Court had power, under section 1983, to grant the injunctive relief prayed for, we conclude that the judgment entered by the District Court was in error, and that this cause

must be remanded for an evidentiary hearing.

■ Upon remand, if the Appellants can bear the "heavy burden" of showing that the State instituted the proceedings in bad faith and with no real hope of ultimate success, in order to chill the free expression of unpopular ideas, Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), then the District Court must grant federal injunctive relief.

The order of the District Court is vacated, and this cause is remanded for an evidentiary hearing.

KALBFLEISCH, District Judge (concurring).

I concur in the opinion and proposed order of Judge Celebrezze that this cause must be remanded for an evidentiary hearing and that "Upon remand, if the Appellants can bear the 'heavy burden' of showing that the State instituted the proceedings in bad faith and with no real hope of ultimate success, in order to chill the free expression of unpopular ideas, Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), then the District Court must grant federal injunctive relief." But I do so for reasons which differ somewhat from those stated in the opinion of Judge Celebrezze.

Whereas great reliance is placed upon the Supreme Court's decision in Dombrowski, et al. v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, I believe the result reached rests more firmly upon the decisions of the Supreme Court in Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715, and Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182. *Dombrowski* recognized the continuing validity of the maxim that a federal district court should be slow to act "where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court." Upon a reading of Douglas v. City of Jeannette, 319 U.S. 157, 162, 63 S.Ct. 877, 87 L.Ed. 1324 (cited in Cameron v. Johnson, 390 U.S. 611,

618, 88 S.Ct. 1335, 20 L.Ed.2d 182), it is obvious that the decision in *Dombrowski*, supra, is premised upon the following sentence, at page 485, 85 S.Ct. at page 1120:

"But the allegations in this complaint depict a situtation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights."

On June 7, 1965, forty-two days after the decision in *Dombrowski*, supra, the Supreme Court in Cameron et al. v. Johnson, Governor of Mississippi, et al., 381 U.S. 741, 85 S.Ct. 1751, in a per curiam decision, stated:

"The judgment is vacated and the cause remanded for reconsideration in light of Dombrowski v. Pfister, 380 U.S. 479, [85 S.Ct. 1116, 14 L.Ed.2d 22]. On remand, the District Court should first consider whether 28 U.S. C. § 2283 (1958 ed.) bars a federal injunction in this case, see 380 U.S., at 484, n. 2, 85 S.Ct. 1116. If § 2283 is not a bar, the court should then determine whether relief is proper in light of the criteria set forth in *Dombrowski*." (p. 741, 85 S.Ct. at p. 1752).

This per curiam decision is of greater significance because the District Court, unlike the District Court in the case before us, held a full evidentiary hearing upon the appellants' complaint, wherein they sought injunctive relief. In compliance with the remand, the District Court again heard and determined the issues presented by the appellants' complaint; and as regards the first specific direction in the Supreme Court's per curiam decision, the District Court decided that 28 U.S.C. § 2283 does deny the Court the power to enjoin the criminal prosecutions involved, and further decided that 42 U.S.C. § 1983 creates no exception to the anti-injunction statute, 28 U.S.C. § 2283.

The District Court paraphrased the second part of the specific directions stated in the Supreme Court's remand as follows:

"Applying the principles of *Dombrowski*, did State conduct in this case

justify declaratory or injunctive relief against further enforcement of the statute?"

and the Court answered this question in the negative. Cameron v. Johnson, 262 F.Supp. 873, 878 (Dec. 24, 1966.)

Upon appeal of the District Court's response on the remand (262 F.Supp. 873), the Supreme Court affirmed the judgment of the District Court (390 U. S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182). However, the Supreme Court failed to recognize or comment upon the following findings and conclusions of the District Court:

"Does 28 U.S.C.A. § 2283 deny this Court the power to enjoin these criminal prosecutions? We think it does." (Cameron, supra, 262 F.Supp. at p. 877.)

and, at page 878:

"We are of the further opinion, following the decision in Baines, [Baines v. City of Danville, 337 F.2d 579] that § 1983, 42 U.S.C., creates no exception to this anti-injunction statute."

Of further significance, the reports reveal that the Supreme Court recently heard reargument in the following four cases: Fernandez v. Mackell, 288 F. Supp. 348 (S.D.N.Y.1968), Probable Jurisdiction noted, 393 U.S. 975, 89 S.Ct. 453, 21 L.Ed.2d 437 (1968) (No. 813, 1968 Term, renumbered No. 20, 1969 Term); Samuels v. Mackell, 288 F.Supp. 348 (S.D.N.Y.1968), Probable Jurisdiction noted, 393 U.S. 975, 89 S.Ct. 453, 21 L.Ed.2d 437 (1968) (No. 580, 1968 Term, renumbered No. 11, 1969 Term); Harris v. Younger, 281 F.Supp. 507 (C. D.Cal.1968), Probable Jurisdiction noted, 393 U.S. 1013, 89 S.Ct. 611, 21 L.Ed. 2d 558 (1969) (No. 163, 1968 Term, renumbered No. 4, 1969 Term); and Landry v. Daley, 280 F.Supp. 938 (related cases include 288 F.Supp. 200) (N.D.Ill. 1968), Probable Jurisdiction noted, 393 U.S. 974, 89 S.Ct. 442, 21 L.Ed.2d 436 (1968) (No. 244, 1968 Term, renumbered No. 6, 1969 Term). The question as to whether 42 U.S.C. § 1983 is an "exception" to 28 U.S.C. § 2283 may well be decided in one or more of the above referred to cases. Although the complete answer may require congressional action to clarify the relationship between §§ 1983 and 2283, the Supreme Court can definitively decide the question in the cases now before it.

Since we agree that the Kentucky common law crime of embracery is constitutional, the only remaining issue to be determined by the District Court is whether relief is proper in light of the criteria set forth in *Dombrowski*. The question for the District Court is not the guilt or innocence of the persons charged; the question is whether the statute is being enforced against them with no expectation of convictions but only to discourage the exercise of protected rights. "The mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' The issue of guilt or innocence is for the state court at the criminal trial; the State was not required to prove appellants guilty in the federal proceeding to escape the finding that the State had no expectation of securing valid convictions." Cameron v. Johnson, 390 U.S. 611, 621, 88 S.Ct. at 1341.

As to appellants' allegation of selective enforcement, the evidence must be limited to conduct of others, which would have brought the offense of embracery into play, and evidence that the authorities allowed such conduct without enforcing the statute. Newspaper, radio or televised accounts of the impending trial of the Black Six in Hart County must be shown to contain the elements of the offense of embracery before a claim of selective enforcement can be sustained.

Until the law as enunciated in *Dombrowski* supra, and in the two *Cameron* cases, supra, is modified by the Supreme Court, or until Congress acts to clarify the relationship between § 1983 and §

2283, I must concur in the order to remand.

O'SULLIVAN, Senior Circuit Judge (dissenting).

Respectfully I dissent.

The question involved, as I view it, is whether § 1983 U.S.C. 42 is an exception to the command of § 2283 U.S.C. 28. Two decisions given by three-judge District Courts convened in this Circuit have held that it is not. In Brooks v. Briley, 274 F.Supp. 538 (M.D.Tenn.) the Court said in an opinion written by Judge William E. Miller, now a member of this Court,

> "The weight of authority and the better reasoned approach require a decision that Sec. 2283 prohibits the enjoining of these state proceedings and that Sec. 1983 is not an 'expressly authorized' exception to Sec. 2283." 274 F.Supp. 553.

Chief Judge Phillips of this Circuit concurred. The decision of the case was affirmed in the United States Supreme Court in Brooks, et al. v. Briley, Mayor of Nashville, et al., 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647.

In Atlantic Coast Line Railroad v. Bhd. of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), the Supreme Court made clear that § 2283 does not express a rule of comity usable depending upon the apparent equity of the federal suit to enjoin state prosecution. The Supreme Court said:

> "On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. * * * In 1955 when this Court interpreted this statute, it stated: 'This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions.' Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 515–516,

[75 S.Ct. 452, 99 L.Ed. 600] (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." 398 U.S. at 286, 287, 90 S.Ct. at 1743.

I would affirm.