**Robert KRAHM et al., Plaintiffs-Appellees,**

v.

**Milton GRAHAM, etc., et al., Defendants-Appellants.**

**No. 25711.**

United States Court of Appeals, Ninth Circuit.

May 10, 1972.

Rehearing Denied June 27, 1972.

---

John A. LaSota, Jr., Asst. City Atty. (argued), Barry Leverent, Asst. City Atty., Joe R. Purcell, Phoenix City Atty., Ralph Majowald, Phoenix, Ariz., for defendants-appellants.

Richard J. Hertzberg, Phoenix, Ariz. (argued), for plaintiffs-appellees.

Before DUNIWAY and TRASK, Circuit Judges, and BYRNE, Sr., District Judge.*

DUNIWAY, Circuit Judge:

This is an appeal from the granting of an injunction. The action was brought under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. The relief sought and granted was an injunction against harrassment of the plaintiffs by prosecutions brought against them in bad faith in the courts of Phoenix, Arizona under that state's anti-obscenity law, Ariz.Rev.Stat. § 13–532. We affirm in part and reverse in part.

1. *The facts.*

The following statement of facts, which is fully supported by the record, is largely taken from the brief of the plaintiff-appellees:

Plaintiffs are owners of and clerks in newsstands and bookstores in Phoenix, Arizona. Defendants are the mayor, the chief of police and the city prosecutor of Phoenix. In 1968 and 1969 over 100 criminal charges for the sale of allegedly obscene books and magazines were initiated against plaintiffs in the City Court of Phoenix by Phoenix police officers at the direction of the defendants.

Eleven of the cases came to trial. None resulted in convictions. Of these cases, two were dismissed at the close of the prosecution's case; in three there was a directed verdict of not guilty; in two the judge found the defendants not guilty; in four a jury found them not guilty. The cases were tried before different judges and different juries. The police were filing cases faster than they could be tried. On May 16, 1969, after 6 findings of Not Guilty in a 2-week period, 14 new prosecutions were instituted. The 11th and last trial was held in the middle of June of 1969. There were 2 more cases set for trial that month and the plaintiffs (defendants in City Court) and their attorney prepared and appeared in court on those dates ready for trial, but at the last minute those cases were dismissed on motion of the prosecutor. No more cases were set down for trial for a while.

On June 25, 1969, an anti-pornography campaign began, spearheaded by the mayor, with announcements on television and to the newspapers. Concurrently, at the mayor's direction, anti-obscenity petitions were circulated to 50,000 people in Phoenix, Arizona, over 21 years of age. The mayor stated publicly that the purpose of the petitions was to influence the tenor of the community so that jurors would be more likely to convict than they had been in the cases already tried. The newspapers reported this statement. The mayor announced that another purpose of the drive was to "make clear to the courts" what the community felt about pornography, and that was reported in the papers. The city magistrates can be fired without cause by the city manager who, in turn, can be fired without cause by the mayor and council.

The mayor indicated to a newspaper reporter that plaintiffs were involved with the Mafia. This appeared in the newspapers. At trial the mayor admitted he had no basis for this statement. He stated publicly that parents had told him that minors were being sold obscene items; at trial he could name no parents or minors, nor could he name any stores that had sold to minors and he admitted he had never reported any of these alleged sales to minors to the police. These alleged sales to minors were further rebutted by the police officer in charge of the obscenity detail who admitted under cross-examination that plaintiffs do not sell to minors and that minors are not even allowed in the "adult" section of plaintiffs' stores. The mayor also indicated to a newspaper reporter that he had been offered a bribe because of his anti-pornography stand. Although at trial he claimed that he had a general discussion with the police about the alleged bribe, he admitted

---

* Honorable William M. Byrne, Sr., United States District Judge, Central District of California, sitting by designation.

that he gave the police no names and did not tell them, or imply, "That any individual had made me a flat bribe offer." A month or two after the drive began, 19 more cases were filed against plaintiffs making a total of 101. The mayor was a candidate for re-election in the fall.

Concurrently with the filing of charges the police seized merchandise from plaintiffs on at least eleven occasions, and, in spite of a state court order that the method they were using to seize material was illegal, defendants continued to make illegal seizures of large amounts of materials until stopped by the Federal District Court in Arizona. Good, et al. v. Blubaum, et al., D.C.Ariz., No.Civ. 6774 Phx.; Sayles v. Graham, D.C.Ariz., No.Civ. 6981 Phx.

All of the pending cases are similar to the eleven that resulted in acquittals and the two that were dismissed on the morning of trial. In all cases the "victim" of the alleged crime (the purchaser) was a willing police officer. In none was there any pandering, obtrusive assaults upon privacy or sale to minors. Yet after the eleven straight acquittals, no move was made to dismiss the remaining cases except for the two already mentioned.

Although no court or jury at any level, in either a civil or criminal action, had ever determined that plaintiffs sold or were selling obscene material or had engaged in criminal conduct, the defendants achieved the following results by their actions: Plaintiffs closed down their stores for two days, large amounts of "adult" merchandise were removed from the stands, money was expended for legal defense and for the quashing of illegal seizures and the return of merchandise wrongfully taken by the police. The prospective costs for future defense and appeals of the cases yet untried and yet to be filed were mounting. Some plaintiffs sold their stores and left town. Another considered selling his.

## 2. *The judgment.*

The trial judge did not rule upon the constitutionality of the method of appointing and removing city magistrates. Nor did he feel it necessary "to redress any alleged attempts on the part of the defendants to influence judicial and public opinion against plaintiffs." The judge did find that there was "bad faith law enforcement," which had a "chilling effect," and that the facts met the "special circumstances" rule of Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

The judgment enjoins (1) further prosecution of any pending criminal action against any of the plaintiffs under A.R.S. § 13–532, and (2) any future actions against any of them under that statute in the absence of a prior adversary judicial hearing on the question of obscenity.

## 3. *Propriety of an injunction.*

The Supreme Court has held that a federal court may enjoin state prosecution only under special circumstances. Dombrowski v. Pfister, *supra*. There the Court found that absent a federal injunction the appellants would have been irreparably injured by the bad faith prosecutions of local authorities. The Court felt that the criminal process was being invoked against the appellants with no hope of ultimate success, but as a device to discourage the appellants' civil rights activities. That case, like this one, involved claims that the plaintiffs' First Amendment rights were being invaded.

■ This case was decided on February 12, 1970. On February 23, 1971, the Court handed down a sextet of decisions dealing with problems more or less common to those in *Dombrowski* and in this case. *See* Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d

701; Dyson v. Stein, 1971, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; Byrne v. Karalexis, 1971, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792. These cases stand for the following propositions: (1) Principles of equity govern federal orders enjoining state proceedings, and federal courts should therefore refuse to grant an injunction unless irreparable injury is demonstrated. (2) In the case of state criminal prosecutions, the injury must be both "great and immediate." Younger v. Harris, 401 U.S. at 46, 91 S. Ct. 746. (3) The cost, anxiety, and inconvenience of defending against a single state prosecution do not constitute such injury. (4) The threat to plaintiff's federally protected right must be one that could not be eliminated by his defense against a single state criminal prosecution. *Id.* (5) Plaintiff must be able to demonstrate that the prosecution was undertaken in bad faith. *Id.* at 49, 91 S.Ct. 746. In each of the sextet cases the Court held that a federal order enjoining state criminal prosecutions was unjustified because these prerequisites had not been shown.

It is argued that the sextet require that we reverse the judgment and direct that the action be dismissed. We have heard it suggested that the effect of the sextet is that henceforth *Dombrowski* will be authoritative only in cases in which the plaintiff is named Dombrowski and the defendant is named Pfister. We do not find that the sextet go that far. *Dombrowski* was distinguished, not overruled; it is still good law in those cases where the sextet's criteria are met. They are met here.

Here over 100 prosecutions are involved, not just one. Nor is it correct that only a few, an average of four, prosecutions have been instituted against each particular plaintiff. We are unpersuaded by defendants' rather deceptive mathematics. Plaintiff Arizona Magazine Distributors, Inc., for example, which employs or employed six other plaintiffs, has twenty-one charges pending against it. Plaintiffs Sam Bard, Myles Bard, and Bard Enterpris-

es, Inc. have eleven charges pending against them. Defendants have filed ten charges against plaintiffs Vernon and Phyllis Hickman.

Surely the damage from this sort of activity is both irreparable and "great and immediate." It can put the plaintiffs out of business without ever convicting any of them of anything. Nor can the threat to plaintiffs' first amendment rights be eliminated by defense against the state prosecutions. Successful defense against eleven of them, plus the voluntary dismissal of two others, brought the filing of fourteen more, and later of an additional nineteen. There are about ninety still pending.

We also agree with the trial judge's finding of bad faith. Defendants argue that the fact that there were no arrests—the plaintiffs appeared in response to summonses—and few seizures of materials distinguishes the present case from *Dombrowski, supra,* where the Court based its decision in part on the presence of illegal seizures and arrests. Being summoned to answer a criminal charge may be less traumatic to the defendant than an arrest. The summons, however, is not a mere piece of paper to be lightly cast aside. It is a substitute for an arrest, and carries the threat of arrest if it is disregarded. It initiates the burden of defense just as surely as an arrest does. There were enough seizures to force the plaintiffs to institute an action in the state court and, when defendants disregarded that judgment, two other actions in the District Court. The attempted distinction is specious.

Nor can *Dombrowski* be distinguished on the ground that the state statute there involved was unconstitutional while here the constitutionality of A.R. S. § 13–532 is conceded. In the vital area of First Amendment rights it is just as easy to discourage exercise of them by abusing a valid statute as by using an invalid one. The fact was recognized by the Supreme Court as long ago as 1896, in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

See also *Dombrowski, supra,* 380 U.S. at 489–490, 85 S.Ct. at 1122:

> "We hold that the abstention doctrine is inappropriate for cases . . . where . . . statutes are justifiably attacked . . . as applied for the purpose of discouraging protected activities."

Defendants finally argue that even assuming that plaintiffs demonstrated irreparable injury and bad faith prosecution, 28 U.S.C. § 2283 prohibits the issuance of injunctive relief. Section 2283 provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In the sextet, the Court did not decide whether 42 U.S.C. § 1983 is an express authorization by Act of Congress within the meaning of § 2283. Younger v. Harris, 401 U.S. at 40–41, 91 S.Ct. at 748–749 (Black, J.) and at 55, 91 S.Ct. at 757 (concurring opinion of Stewart, J.). The question was also reserved in Dombrowski v. Pfister, 380 U.S. at 484 n. 2, 85 S.Ct. 1116, in Cameron v. Johnson, 1968, 390 U.S. 611–613 n. 3, 88 S. Ct. 1335, 20 L.Ed.2d 182, and in Lynch v. Household Finance Co., 1972, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

In Lenske v. Sercombe, 9 Cir., 1968, 401 F.2d 520, we found it unnecessary to decide the question. We did observe, however, that if § 1983 is an exception, it would be applicable only "under extraordinary circumstances where irreparable injury is threatened to federally created rights." *Id.* at 521. Other circuits are divided on the question. Compare Baines v. City of Danville, 4 Cir., 1964, 337 F.2d 579; Goss v. Illinois, 7 Cir., 1963, 312 F.2d 257; Smith v. Village of Lansing, 7 Cir., 1957, 241 F.2d 856; Sexton v. Barry, 6 Cir., 1956, 233 F.2d 220, 226, holding that § 1983 is not an exception to § 2283 with Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119, 124, holding that § 1983 is such an exception.

We confess that we find the reservation of the question in *Dombrowski* rather puzzling. It is based on the proposition that § 2283 applies only to enjoining pending state court proceedings, not to enjoining threatened proceedings not yet filed. In *Dombrowski,* no state proceeding had been commenced when Dombrowski filed his civil rights action. However, while that action was pending, a restraining order having been dissolved and no injunction having issued, state prosecutions were begun, and the Court in *Dombrowski,* in its order of remand, specifically provided for "prompt framing of a decree restraining prosecution of the pending indictments . . . ." 380 U.S. at 497, 85 S.Ct. at 1127. This was in accord with the ancient rule in equity applied by the Court in Chapman v. Sheridan-Wyoming Coal Co., 1950, 338 U.S. 621, 630, 70 S.Ct. 392, 397, 94 L.Ed. 393:

> "But the action is one in equity, and 'equity will administer such relief as the exigencies of the case demand at the close of the trial.' Bloomquist v. Farson, 222 N.Y. 375, 380, 118 N.E. 855, 856; Lightfoot v. Davis, 198 N. Y. 261, 273, 91 N.E. 582, 586."

Section 2283 does not prohibit the filing of an action; it prohibits the granting of an injunction. The idea that the decree in *Dombrowski* does not enjoin pending prosecutions and thus does not conflict with § 2283 is, we confess, a bit of metaphysics that eludes our grasp. All that it can accomplish is a race between prospective defendants and the prosecutor, the former running to the federal courts, the latter to the state courts. *See* Honey v. Goodman, 6 Cir., 1970, 432 F.2d 333, 343.

 Be that as it may, we find that the injunction issued here was not in violation of § 2283, but for a different reason. Judge Haynesworth, speaking for the Fourth Circuit in Baines v. City of Danville, *supra,* holds that § 2283 is a limitation on the exercise by

the federal courts of their equitable jurisdiction, but is not a jurisdictional statute. It is grounded on principles of comity. Thus, it is "inapplicable in extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury." 337 F.2d at 593. Accord, Honey v. Goodman, *supra,* 432 F.2d at 343.

■ There can be no doubt that the civil rights act confers upon the federal courts not only jurisdiction, but equitable jurisdiction, to enforce federal constitutional rights against state action which violates those rights. In the extraordinary type of case to which Judge Haynesworth refers, an injunction against state prosecutions, pending or prospective, may indeed be necessary in aid of that jurisdiction. Such an injunction, under such circumstances, is expressly permitted by § 2283.

Nothing in the sextet cases is contrary to the foregoing. In those cases the Court expressly recognized the exceptional type of case that we are discussing. *E. g.,* Younger v. Harris, *supra,* 401 U.S. at 46, 53–54, 91 S.Ct. at 751, 754–755 (Black, J.); at 56, 91 S.Ct. at 757 (Stewart, J.); Perez v. Ledesma, *supra,* 401 U.S. at 85, 91 S.Ct. at 677 (Black, J.) and at 96–97, 91 S.Ct. at 682–683 (Brennan, J.); Dyson v. Stein, *supra,* 401 U.S. at 203, 91 S.Ct. 769.

We hold that the court properly enjoined the pending prosecutions.

4. *The requirement that future prosecutions be preceded by adversary hearings.*

We think that the requirement that all future prosecutions be preceded by adversary hearings is overbroad. Such a requirement has been imposed in cases involving mass seizures of material said to be obscene. A Quantity of Copies of Books v. Kansas, 1964, 378 U.S. 205, 84

S.Ct. 1723, 12 L.Ed.2d 809; Tyrone, Inc. v. Wilkinson, 4 Cir., 1969, 410 F.2d 639. Some courts have extended this principle to arrests in connection with the publication or distribution of obscene materials. See, e. g., Delta Book Distributors, Inc. v. Cronvich, E.D.La., 1969, 304 F. Supp. 662, rev'd sub nom. Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701. The argument is that a prior restraint is effected when an arrest is made, and therefore an adversary hearing prior to the inception of the criminal process is required. The Supreme Court, however, appears to have concluded to the contrary. Milky Way Productions, Inc. v. Leary, S.D.N.Y., 1969, 305 F.Supp. 288, aff'd, New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); Perez v. Ledesma, *supra.* This result also comports with the Court's strongly enunciated policy that state courts be permitted "to try state cases free from interference by federal courts." Younger v. Harris, *supra,* 401 U.S. at 43, 91 S.Ct. at 750.

Here we do not deal with an unconstitutional statute, such as was involved in *Dombrowski, supra.* Rather, we deal with an admittedly valid statute which the state has a right to enforce, so long as it proceeds in good faith. We think that the blanket requirement of prior adversary hearings is improper under these circumstances. The court, however, should retain jurisdiction so that if in the future further harassing enforcement measures, undertaken in bad faith, should again occur, prompt relief can be afforded.

The portion of the judgment enjoining the pending prosecutions is affirmed. The balance of the judgment is vacated, and the case is remanded for modification of the judgment in accordance with the views here expressed, and for such further proceedings, if any, as the court may deem proper.