Benjamin H. MUNSON, M. D.

v.

William J. JANKLOW, Attorney General
of South Dakota, et al.

No. CIV76–3047.

United States District Court,
D. South Dakota.

Oct. 22, 1976.

Roy Lucas, Lucas & Stoltz, Washington, D. C., Homer Kandaras, Rapid City, S. D., Joe L. Maynes, Maynes, Tonner & Maynes, Aberdeen, S. D., for plaintiff.

William Delaney, III, Brent A. Wilbur, Asst. Attys. Gen., Pierre, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiff in this action seeks preliminary and permanent injunctive relief against a criminal prosecution pending against him in South Dakota Circuit Court. This matter is now before the Court on several motions, which are as follows: Plaintiff's motion for a protective order against further discovery by Defendants; Plaintiff's motion for an "omnibus discovery order"; Defendants' motion to strike out complaint and dismiss action for failure to comply with discovery; Defendants' motion to dismiss for failure to state a claim upon which relief can be granted; and Plaintiff's application for a Three Judge Court. This opinion will consider only the last two motions listed.

### I. APPLICATION FOR THREE JUDGE COURT

The complaint seeks injunctive relief against a criminal prosecution brought under S.D.C.L. § 22–16–20. Plaintiff is a practicing physician specializing in obstetrics and gynecology, and his practice includes the operation of an out-patient clinic for the performance of abortions. The pending state criminal prosecution alleges second-degree manslaughter in connection with the death of one of Plaintiff's patients.

The patient died some three days after Plaintiff had performed an abortion upon her. The complaint alleges that the prosecution was initiated in bad faith in that the prosecution is factually groundless and was brought for the purpose of stopping all legal abortions in the State of South Dakota. Plaintiff does not attack the constitutionality of the language of S.D.C.L. § 22–16–20 but instead urges that the allegedly bad faith prosecution is tantamount to an unconstitutional application of that statute. He thus seeks a Three Judge Court under 28 U.S.C. § 2281, which reads in relevant part as follows:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . shall not be granted by any district court or judge thereof *upon the ground of the unconstitutionality of such statute* unless the application therefor is heard and determined by a district court of three judges under Section 2284 of this title. (Emphasis added.)

Although § 7, P.L. 94–381 repealed 28 U.S.C. § 2281 effective August 12, 1976, § 2281 is still applicable in this case since the complaint was filed August 2, 1976.

Plaintiff's argument proceeds from the valid premise that a Three Judge Court is required by § 2281 when a statute is attacked as being unconstitutionally applied. *Milky Way Productions, Inc. v. Leary*, 305 F.Supp. 288 (S.D.N.Y.1969), *aff'd* 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970). In *Milky Way* a Three Judge Court was properly convened when an obscenity statute was allegedly applied in such a manner as to proscribe constitutionally protected conduct. Plaintiff also relies on *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), wherein a Three Judge Court was held to have been required when Plaintiffs originally sought to enjoin the threatened enforcement of a criminal trespass statute. The threatened enforcement was against the distribution of anti-war leaflets at a shopping center.

A review of these cases and others cited by Plaintiff wherein a Three Judge Court was convened to hear allegations that a state statute was being unconstitutionally applied reveals that in each such case the specific conduct in question was alleged to be subject to constitutional protection. While Plaintiff's performance of abortions as part of his medical practice is subject to the constitutional protections set out in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), it does not necessarily follow that the specific conduct involved in this lawsuit is subject to constitutional protection. Even assuming a state prosecution resulting in conviction, the only conduct which would be proscribed would be the performance of criminally negligent abortions as opposed to the performance of all lawful abortions. One key distinction between this case and cases such as *Steffel v. Thompson, supra*, is that here Plaintiff does not allege that the terms of South Dakota's second-degree manslaughter statute are being construed in an overly broad manner so as to generally preclude lawful abortions.

For purposes of his application for a Three Judge Court, Plaintiff's complaint may be generally characterized as alleging bad faith on the part of law enforcement authorities under a constitutionally valid statute. Thus Plaintiff is directing his attack solely at the conduct of the law enforcement authorities, and does not in any manner attack S.D.C.L. § 22–16–20. In this situation a Three Judge Court is not required by 28 U.S.C. § 2281. *See Allee v. Medrano*, 416 U.S. 802, 812, 94 S.Ct. 2191, 2198–2199, 40 L.Ed.2d 566 (1974).

For the foregoing reasons, the application for a Three Judge Court will be denied.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This Court must of course begin its analysis of the Motion to Dismiss with a careful examination of the complaint, every

allegation of which must be taken to be true. Further, the pleadings must be liberally construed in any civil rights action. *Windsor v. Bethesda General Hospital*, 523 F.2d 891, 893 (8th Cir. 1975). A motion to dismiss a civil rights complaint may be granted only where it clearly appears that a plaintiff could prove no set of facts which would entitle him or her to relief. *Id.*

On the other side of the coin, however, one who seeks a federal injunction of a pending state criminal prosecution must shoulder the heavy burden of demonstrating both great and immediate irreparable injury. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1972). Such great and immediate irreparable injury may be shown only in extraordinary circumstances which render the state criminal court incapable of fairly and fully litigating the federal issues before it. *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975). The most frequently articulated method of demonstrating such extraordinary circumstances is by showing prosecutorial bad faith. This is the method upon which Plaintiff, in his complaint and at oral argument, places primary reliance. However, it may be inferred from the complaint that Plaintiff also attempts to demonstrate the generalized extraordinary circumstances exception envisioned in *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971), in which irreparable injury can be shown even in the absence of bad faith. This Court will examine these allegations first.

In this context, Plaintiff alleges irreparable injury to his right to practice medicine, and his patients' rights to have his services available for the performance of lawful elective abortions. These allegations are in essence very similar to those made by the Plaintiff in *Younger v. Harris, supra*, wherein it was claimed that the pending state prosecution had a chilling effect upon first amendment rights. This claim was held to be an insufficient showing of irreparable harm in *Younger*, 401 U.S. at 50–53, 91 S.Ct. at 753–754. In the judgment of this Court, the holding of

*Younger* applies in this case. Plaintiff's allegations of a chilling effect upon his right to perform lawful abortions and the rights of his patients or prospective patients to receive lawful abortions are insufficient, in the absence of a showing of bad faith or harassment, to justify the extreme remedy of federal injunctive relief. Indeed, the "chilling effect" upon these rights does not approach, in either nature or degree, the sort of chilling effect raised in *Younger*. In *Younger* the chilling effect was presented by the fear of further prosecutions and alleged inability to conform one's conduct or speech in such a manner as to alleviate that fear. Plaintiff in this case does not allege that he fears a criminal prosecution each time he has performed or will perform a lawful abortion. His allegations instead appear to be based on a loss of patients due to adverse publicity resulting from the prosecution, accompanied by a voluntary cessation of his practice due to anxiety created by the prosecution. As stated in *Younger*, however:

. . . the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' [injury] . . . 401 U.S. at 46, 91 S.Ct. at 751.

Further, the type of publicity and its consequences which naturally flow from any criminal prosecution is not, in the judgment of this Court, sufficient to generate the irreparable injury contemplated by *Younger*. Compare *Krahm v. Graham*, 461 F.2d 703, 705 (9th Cir. 1972). In *Krahm*, a finding of irreparable injury was predicated in part upon a showing that governmental authorities had generated false and prejudicial publicity in connection with a series of criminal prosecutions against the Plaintiffs. No such publicity is alleged to exist in this case. In short, Plaintiff's claims of irreparable injury stemming from alleged extraordinary circumstances fall short, in the absence of a showing of prosecutorial bad faith, of meeting the *Younger v. Harris* requirements. Consequently, this Court now turns to Plaintiff's allegations of bad faith.

■ A prosecution must be considered to be in bad faith when it is initiated without a reasonable expectation of obtaining a valid conviction. *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975). Bad faith may be indicated, then, when a prosecution is continued after a case has been dismissed for lack of probable cause. *Timmerman v. Brown*, 528 F.2d 811 (4th Cir. 1975). In this case, a judicial determination of whether the prosecution is supported by probable cause has not yet been made.

Bad faith may also be indicated by a series of unsuccessful yet repeated prosecutions against one person. *Krahm v. Graham*, 461 F.2d 703 (9th Cir. 1972). However, it has been held that a showing of multiple prosecutions against one person or group, in the absence of some showing of similar previously unsuccessful prosecutions against the same person or group, is not alone sufficient to show bad faith. *Grandco Corp. v. Rochford*, 536 F.2d 197 (7th Cir. 1976).

■ From its review of *Younger* and its progeny, this Court concludes that a general allegation of bad faith is insufficient to demonstrate irreparable injury. The conclusion of bad faith must be supported by specific allegations, and these specific allegations must in turn be of such a nature so that, if taken as true, they would support an inference of bad faith. With these principles in mind this Court will now proceed to examine the allegations in the Complaint.

The allegations of bad faith which are relevant to the definition of that term, *i. e.* the initiation of a criminal prosecution without a reasonable expectation of obtaining a valid conviction, are as follows:

## A. A PREVIOUS INVESTIGATION BY A PROSECUTOR DID NOT RESULT IN CRIMINAL CHARGES.

■ Plaintiff alleges that the State's Attorney for Pennington County investigated the incident in question and found no basis for criminal liability. The prosecution which Plaintiff now seeks to enjoin was brought by the South Dakota Attorney General after this investigation.

The Attorney General has concurrent jurisdiction with the State's Attorneys for the various counties in South Dakota. S.D.C.L. § 23–3–3. The Attorney General possesses a general supervisory power over State's Attorneys. S.D.C.L. § 1–11–1(5). In view of this supervisory power, the Attorney General certainly is authorized to review discretionary prosecutorial decisions made by State's Attorneys. The situation thus presented is simply one of differing judgments. The type of judgment involved in the decision whether to prosecute may well involve considerations over and above a factual basis for criminal charges. *See The President's Commission on Law Enforcement and Administration of Justice—Task Force Report: The Courts*, 5–6 (1967). In the judgment of this Court, the fact that a subordinate prosecution judgment has been in effect reviewed by the Attorney General, who has such review powers, does not substantiate a general conclusory allegation of bad faith.

## B. THE PRELIMINARY INFORMATION WHICH INITIATED THE CRIMINAL CHARGES ALLEGES PERFORATION OF THE UTERUS WHEN MEDICAL EXAMINATIONS OF THE PATIENT FAILED TO DISCLOSE SUCH PERFORATION.

It should be noted at the outset that the preliminary information also alleges improper abortion technique, improper pre-operative and post-operative procedures and failure to initiate proper follow-up. A preliminary information must be followed by a probable cause determination. *See* S.D.C.L. §§ 23–20–2, 23–32–2, 3. This Court is unable to say that the allegations concerning the perforation of the uterus, even if ultimately found to be baseless, would taint the entire preliminary information as having been filed in bad faith. If probable cause is found to exist, then an information must be

filed which contains the names of witnesses then known to the prosecutor. S.D.C.L. §§ 23–20–2, 4. In short, Plaintiff's allegation on this point, taken as true for purposes of the motion to dismiss, does not support a finding that the entire prosecution was initiated in bad faith.

## C. FAILURE TO INVESTIGATE PLAINTIFF'S CUSTOMARY MEDICAL PROCEDURES BEFORE INITIATING PROSECUTION.

This allegation does not approach a showing of bad faith. Such a broad investigation into Plaintiff's general medical practice would have carried potential unwarranted invasions of Plaintiff's privacy and possible intrusions into numerous physician-patient relationships, as well as unavoidable dangers to Plaintiff's fifth amendment protection against self-incrimination. This Court simply cannot infer prosecutorial bad faith from an understandable reluctance to carry on such an inquisitorial investigation into Plaintiff's medical practice.

## D. DELIBERATE MISSTATEMENT OF DATE OF ALLEGED CRIMINAL ACT IN ORDER TO CIRCUMVENT THREE YEAR STATUTE OF LIMITATIONS.

Plaintiff may of course seek dismissal of the criminal charges in state court by presenting an appropriate motion based on the statute of limitations. The preliminary information alleges that the alleged crime was committed on June 18, 1973. According to the Complaint in this case, this is the date upon which the patient died. The abortion was performed three days earlier. The preliminary information was filed June 17, 1976. Whether this allegation would support a finding of bad faith must depend on a construction by the state courts which would set the method of computing the statute of limitations. Under these circumstances this Court cannot say that the timing of the preliminary information and the date alleged therein is indicative of bad faith.

## E. THREE COUNTS ARE USED IN THE PRELIMINARY INFORMATION TO ALLEGE CRIMINAL LIABILITY FROM ONE INCIDENT OR ACT.

The preliminary information contains three counts, each of which alleges a violation of S.D.C.L. § 22–16–20. This method of presenting criminal allegations is specifically authorized by S.D.C.L. § 23–32–6, which allows " . . . different statements of the same offenses . . . ." See also S.D.C.L. § 23–32–7. Thus Defendants in this case followed a legally permissible method of proceeding. In any event this allegation has little relevance to whether the prosecution was initiated without reasonable expectation of obtaining a valid conviction. In short, the use of three counts is not, in this case, indicative of bad faith.

## F. PROCEEDING BY PRELIMINARY INFORMATION RATHER THAN INDICTMENT.

This allegation hardly supports an inference of bad faith, since it results in some benefit to the Plaintiff. As a defendant in the criminal proceedings, he will in this case be present at the probable cause determination. He will have the opportunity to confront and cross-examine the prosecution's witnesses, as well as produce witnesses on his behalf. S.D.C.L. § 23–27–9. Had this prosecution been initiated by indictment, Plaintiff would not have enjoyed these rights. See S.D.C.L. § 23–30–12.

## G. UNLAWFUL PROSECUTORIAL MOTIVE.

1. Plaintiff is the only South Dakota physician performing lawful abortions.
2. Defendants have never before brought a second-degree manslaughter charge against a physician.
3. Defendants' objective in filing the criminal charges in this case is to stop all lawful abortions in this state.

In the judgment of this Court, these allegations do not negate a factual

**550**

basis for the criminal charges. Taken as true, they may present a valid defense of unconstitutionally selective prosecution to the criminal charges. *See United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972). Since the right to be free from selective prosecution is based in the fourteenth amendment's equal protection clause, state criminal courts are required to recognize, hear and determine a defense based on that right. *Oyler v. Boles*, 368 U.S. 448, 454–457, 82 S.Ct. 501, 505–506, 7 L.Ed.2d 446 (1962). Under these circumstances, these allegations do not reach the level of bad faith required by *Younger v. Harris* and its progeny, nor do they otherwise demonstrate injury of a nature which cannot be litigated in a state criminal court.

Of course, this Court does not express any opinion whatever on the merits of the criminal case, other than the narrow finding made with respect to the allegations of bad faith.

For the foregoing reasons, this Court concludes that the Complaint in this case fails to state a claim upon which relief can be granted. The foregoing shall constitute this Court's findings of fact and conclusions of law.