Frank MARSICO and William
Graff, Plaintiffs,

v.

Richard ELROD, George W. Dunne, Mathew W. Bieszczat, Mildred Casey, Frank W. Chesrow, Carl R. Hanson, Irene C. Hernandez, Jerome Huppert, Ronald R. Larson, Mary McDonald, Matt Ropa, Ruby Ryan, John Stroger, Jr., Joseph A. Tecson, Martin Tuchow, Harold L. Tyrrell and Joseph I. Woods and Sheriff's Police Sgt. Clark Buckendahl and Robert Napora, Defendants.

No. 78 C 2749.

United States District Court,
N. D. Illinois, E. D.

March 7, 1979.

L. Robert Artoe, Chicago, Ill., for plaintiffs.

Bernard Carey, State's Atty., John A. Dienner, III, Asst. State's Atty., Chicago, Ill., for all defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This is a civil action seeking declaratory, injunctive and monetary relief to prevent the State of Illinois and the County of Cook from allegedly depriving plaintiffs of rights, privileges and immunities guaranteed by the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution. Our jurisdiction is invoked pursuant to 28 U.S.C. §§ 1257(2), 1343(3), (4), 2201, 2202, 42 U.S.C. §§ 1981, 1983, 1985. The complaint charges the defendants with maliciously enforcing an ordinance which prohibits an outdoor movie theater licensee from exhibiting films containing sexually explicit conduct "when such motion picture or film presentation is viewable from any private residence or any public street or walkway."[1] The complaint further alleges that the enforcement of the ordinance "is being carried out with the basic unlawful purpose and effect of intimidating and harassing and punishing plaintiffs and deterring them from the exercise of their constitutionally protected rights of freedom of speech, press, association, property, due process and inquiry. . . ."[2]

Plaintiffs are Frank Marsico, the owner-operator of the Starview Drive-In Theatre, and William Graff, the theater's projectionist. Subsequent to the passage of the ordinance, plaintiffs Marsico and Graff were arrested by the Cook County Sheriff's Department. Marsico was charged with two counts of obscenity and "two other offenses relating to the ordinance."[3] These charges

---

1. Outdoor Movie Theater Ordinance, ch. 14-47, *et seq.* March 6, 1978. Appended to opinion.

2. Amended Complaint, p. 8, ' 41.

3. Amended Complaint, p. 6, ' ' 29 and 30 allege that plaintiff Marsico has unsuccessfully attempted to learn the nature of the two latter charges.

are still pending in state court. No charges were pressed against Graff.

Defendants have moved to dismiss arguing that this Court should abstain from adjudicating this matter because of pending state criminal proceedings and/or that the complaint should be dismissed for failing to state a claim upon which relief may be granted. For the reasons stated herein, we grant defendants' motion to dismiss on abstention grounds.

## I. FACTS

The facts of this case are not in dispute. The Starview Drive-In is in the business of showing sexually explicit films. Plaintiffs characterize these films as a "challenge [to] conformity and orthodoxy of thinking concerning present contemporary social and political events and view points."[4] Defendants' characterization of the films, which itself challenges conformity and orthodoxy of thinking, is somewhat more graphic.[5] The films are clearly visible from nearby private residences and highways.[6] The residents, many of whom are parents of young children, have complained to authorities that they would prefer not to board up their windows and enclose their back yards in time for the 8:40 p. m. opening feature. Similarly, highway travelers have submitted affidavits attesting to the traveling hazards caused by the unobstructed view of the screen from Route 53.[7]

There is no dispute that the outdoor movie theater ordinance, Ch. 14–47, *et seq.,* was passed on July 10, 1978 by the Cook County Board of Commissioners in response to this situation; that the license required by the ordinance may not, in fact, be extant; and that compliance with the ordinance will be quite costly to plaintiff Marsico.[8] There is also no dispute that at 2:00 a. m. on July 26, 1978, plaintiffs were arrested, the films "Black Silk Stockings" and "Femme de Sade," a preview of coming attractions and

the concession advertisements were seized pursuant to a search warrant, and the theater was closed down. To date, plaintiff Marsico has allegedly not been able to obtain the requisite license to operate his theater. The complaint does not allege subsequent arrests or prosecutions, or even that the plaintiffs fear the threat of such arrests. Although it is not explicitly stated, we infer from the complaint that the Starview Drive-In has not been open for business since the July arrest.

On the basis of these facts, defendants argue that, since criminal proceedings are pending against Marsico, this Court should follow the rule of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and abstain from adjudicating plaintiffs' claims. Plaintiffs' briefs virtually ignore this procedural hurdle and argue instead that their First Amendment rights, including the right to earn a living by the exhibition of films, is subjected to the "chilling effect" of the ordinance which requires them to be "self-censors" of the films' contents, many portions of which do not fall within the prohibitions of the ordinance.

## II. ABSTENTION

In *Younger v. Harris,* the United States Supreme Court held that principles of comity, equity and federalism require federal courts to abstain from enjoining pending state criminal proceedings unless there exist extraordinary circumstances, such as irreparable injury, harassment and bad faith which pose a great and immediate threat to the protection of the plaintiff's constitutional rights and which prevent their vindication in the state court proceeding. This holding was predicated upon two considerations of substantial precedential significance: (1) the jurisprudential policy against equitable interference in cases in which there exists an adequate legal reme-

---

4. Amended Complaint, p. 8, ' 41.

5. Defendants' Reply, Oct. 27, 1978.

6. Affidavits of Robert Napora, Thomas A. Hunding, A. Phelps Langtry.

7. Affidavits of A. Phelps Langtry and Robert Napora.

8. Amended Complaint, ' 3.

dy and there does not exist a threat of irreparable harm, *see Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); 28 U.S.C. § 2283, and (2) the recognition that our federal system of government requires the federal courts to defer to legitimate state court control over essential state matters even when federally protected rights may be at issue. Since plaintiff Marsico is the subject of a current state prosecution in which he can raise as defenses the same contentions submitted in this action, we conclude that *Younger* and its progeny[9] require us to abstain from adjudicating his claims.

### III. BAD FAITH AND HARASSMENT

■ The holding in *Younger* permits federal courts to hear cases which would otherwise qualify for abstention if "bad faith, harassment, or other unusual circumstances that would call for equitable relief" can be shown.[10] 401 U.S. at 54, 91 S.Ct. at 755. These exceptions have been narrowly construed, *Huffman v. Pursue, Ltd., supra,* so narrowly in fact, that several Justices are of the opinion that they have been substantially eliminated.[11] Similarly, courts have ruled that a specific demonstration of bad faith-harassment is necessary to obviate

*Younger* and that a mere allegation or conclusory finding will not suffice. *Grandco Corp. v. Rochford,* 536 F.2d 197, 203 (7th Cir. 1976).

■ The instant case provides no basis for its claims of bad faith and harassment. The pleadings allege only that the owner and projectionist were each arrested once but charges were pressed only against the owner. We fail to find bad faith in an arrest at 2:00 a. m. when that is the time during which the alleged violation of the statute occurred. Similarly, we fail to find bad faith in the seizure of the two films, concession advertisements and previews of coming attractions since the propriety of both the warrant and the seizure were reviewed and upheld by Circuit Court Judge Orlando on September 8, 1978. We accept defendants' argument that in so holding, the court implicitly found that the seizing officers were not required to edit the films, which were spliced together, at the time of arrest in order to clip out the lead-ins and the trailers.

So, too, we conclude that the state prosecution of only the owner in spite of the arrest of both the owner and the employee are insufficient evidence of bad faith and

9. The *Younger* progeny have expanded this philosophy into a body of case law which forecloses federal courts from granting relief once there has been an express finding that the state's interest in its own proceedings are substantial and that those proceedings provide a proper forum for vindication of the federal plaintiff's claims, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); even if the state action preceded the federal one, *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); unless there is evidence of exceptional circumstances, *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1975).

10. 12 Wright & Miller, § 4255, p. 579 n. 6, recognized that the case law does not specify whether bad faith and harassment are two separate or single concepts. They refer to Justice Brennan's opinion in *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) issued the same day as *Younger,* which adopts Professor Fiss' use of the single term "bad-faith-harassment": "Since one cannot readily imagine either good-faith harassment or bad-faith without harassment, the phrase is tauto-

logical. . . ." Fiss, *Dombrowski,* 1977, 86 *Yale L.J.* 1103, 1115 n. 34.

11. See Justice Steven's dissent in *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

Cases which have recognized these exceptions have done so only where there was substantial proof of multiple, unsuccessful prosecutions. *Krahm v. Graham,* 461 F.2d 703 (9th Cir. 1972); *International Society for Krishna Consciousness, Inc. v. Conlisk,* 374 F.Supp. 1010 (N.D.Ill.1973); or intentional and repeated violations of court orders, *Llewelyn v. Oakland County Prosecutor's Office,* 402 F.Supp. 1379 (D.C.Mich.1975). On the other hand, bad faith-harassment claims have been rejected in cases where multiple prosecutions resulted in convictions, *Grandco, supra,* since even vigorous, good faith enforcement of a statute of doubtful constitutional validity will not give rise to bad faith and harassment, *Gajon Bar and Grill v. Kelly,* 508 F.2d 1317 (2d Cir. 1974); *Community Action Group v. City of Columbus,* 473 F.2d 966 (5th Cir. 1973).

harassment. Once again, this practice indicates the county's good faith in seeking to enforce the ordinance only against the actual source of its violation. It is consistent with our analysis that any proceedings by or against the projectionist are derivative only and would thus result in a futile exercise in law enforcement. Finally, the complaint vaguely argues that the arrests and state proceedings have subjected plaintiffs to monetary loss and substantial emotional distress. The case law has unanimously held that allegations of injury incidental to a criminal proceeding do not state a claim for relief. *Oquendo v. Ortiz,* 372 F.Supp. 79 (D.C.Puerto Rico 1973). In sum, we find no factual substantiation sufficient to sustain a finding of bad faith and harassment which would remove plaintiffs from *Younger's* strictures. In fact, we find that this is precisely the type of situation in which *Younger* requires judicial restraint.

## IV. DERIVATIVE PRECLUSION OF LEGALLY INDISTINCT PARTIES

There exists throughout the *Younger* line of cases a tension between the general rule that abstention as to each party must be determined on an individual basis, *Doran v. Salem Inn,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) and the recognition that some parties may be derivatively precluded [12] from proceeding as plaintiffs in a federal action because the nature of their relationship to a criminal defendant in a pending state prosecution renders them legally indistinct entities for *Younger* purposes, *e. g., Hicks, supra.* The Supreme Court stated in *Doran v. Salem Inn, supra* at 928–29, 95 S.Ct. at 2566, that "there plainly may be some circumstances in which legally distinct parties are so clearly related that they should be subject to the *Younger* considerations which govern any one of them . . . ." Such circumstances, the Court explained, could be found where there exist the factors of ownership, management, and control by one party over another. Similarly, in *Hicks, supra,* the Court reversed a district court for not abstaining in a case brought by theater owners whose employees were the subjects of pending state criminal prosecutions on the identical issue. The basis for the holding was the finding of an agency relationship between the employers and their employees whereby through the factors of ownership, management and control, the employees' acts were those of their employers. Even though the theater owners were subsequently joined as defendants to the criminal complaint, the Court said:

"When they filed their federal complaint, no state criminal proceedings were pending against appellees by name; but two employees of the theater had been charged and four copies of 'Deep Throat' belonging to appellees had been seized, were being held, and had been declared to be obscene and seizable by the Superior Court. Appellees had a substantial stake in the state proceedings, so much so that they sought federal relief, demanding that the state statute be declared void and their films be returned to them. *Obviously, their interests and those of their employees were intertwined.*" *Id.,* 422 U.S. at 348, 95 S.Ct. at 2291. [Emphasis added.]

The lower federal court cases which have applied these concepts have emphasized that the essential element underlying the derivative preclusion of the legally indistinct parties concept is the identification of the party whose real interests are at stake and the determination of whether that party's interests can be adequately vindicated in the state court proceedings.

In *Eagle Books, Inc. v. Reinhard,* 418 F.Supp. 345 (N.D.Ill.1976), *vacated on other grounds Ward v. Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977), the corporate owners and employees of a bookstore sought declaratory and injunctive relief from an allegedly unconstitutional obscenity law. All plaintiffs were the subjects of pending state criminal proceedings. One of the issues before the court was whether *Younger* barred relief as to any of the plaintiffs. On the basis of the analysis

12. 90 *Harv.L.Rev.* 1133, Developments of the Law—Sections 1983 and 1985.

cited in the text, the court granted injunctive and declaratory relief as to the corporate plaintiff but dismissed the individual plaintiffs upon a finding that their interests in the case devolved from their corporate employer and could, therefore, be adequately, albeit derivatively, represented 'thereby.

Judge Flaum discussed the factors in the relationship between a bookstore owner and his employees which rendered those parties legally indistinct for *Younger* purposes:

"In the present case, the nexus between Eagle Books and its plaintiff-employees is too substantial to allow for the categorical exclusion of consideration of comity allowed in *Steffel* and *Doran.*

\*     \*     \*     \*     \*     \*

". . . There is no allegation that they [employees] partake of their employer's loss of income. They have no institutional role as book and film dispensers. They do have an interest in being able to carry out their present employment, which appears to subject them to repeated risk of prosecution.

\*     \*     \*     \*     \*     \*

". . . Eagle Books was the employer, and in a relevant sense the controller of its employees . . . ." *Id.* at 352, 353.

Accordingly, the court concluded that, "[T]he closer the relationship between parties, the more likely it is that the comity policies underlying *Younger* will be disrupted by federal equitable relief with respect to one when a pending criminal proceeding exists with respect to the other." *Id.* at 352.

Like the employees in *Eagle Books,* Graff does not allege that his employer's loss of income has affected him. However, unlike the employees in *Eagle Books,* Graff has also not alleged that his employment has been jeopardized or that he has been or is . threatened with repeated prosecutions. On the contrary, the complaint identifies Graff as a union projectionist who was assigned to the Starview Drive-In. We assume that, if the union controls its projectionists' placement, it can also control their replacement when their place of employment closes down.

The case of *Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210 (D.Conn.1978) presents an informative, albeit conclusory, example of the application of the derivative preclusion of legally indistinct parties concept. A massage establishment brought a civil suit in state court to prevent the enforcement of regulations governing its operations. The identical suit was subsequently brought in federal court with the exception that a masseuse was added as a named plaintiff. The court held that the masseuse's interests were adequately represented in the state court proceedings since her employer was a plaintiff in both actions and they were represented by the same counsel. The court relied on the *Hicks* analysis which requires equitable restraint where the parties' interests are virtually identical:

"If the parties were not participants in the same business enterprise, they would not be 'thrown into the same hopper for *Younger* purposes,' even though represented by common counsel. See *Doran v. Salem Inn.* . . . Here the parties' interests are intertwined as in *Hicks,* and comity requires the court to treat them identically, exercising equitable restraint as to all plaintiffs."

*Id.* at 220. The same considerations of ownership, management and control appear to have been the basis for this holding as well.

We recognize that *Younger* does not require abstention where the interests of the parties are found merely to be similar rather than identical or intertwined. For example, the case of *Grandco Corp. v. Rochford, supra,* held that multiple plaintiffs who engaged in the same business activity (movie theaters) were not legally indistinct for *Younger* purposes. At the same time, the Seventh Circuit cited with approval that section of the district court's opinion which applied *Younger* to the relationship between the theater and its manager. We interpret this holding to comport with our analysis of the derivative preclusion doctrine.

We recognize, however, that the court in *Graham v. Hill,* 444 F.Supp. 584 (N.D.Tex. 1978) rejected the derivative preclusion doctrine and refused to bar the owner of a theater-bookstore from proceeding in a federal court action seeking declaratory and injunctive relief from an allegedly unconstitutional state statute even though his employee was the subject of a parallel criminal proceeding in the state court. We find the *Graham* case to be distinguishable for two reasons. First, in *Graham,* the state court agreed to stay the criminal proceeding until the federal court ruled on the constitutionality of the state statute. Second, the *Graham* case neither cites nor analyzes *Hicks,* the Supreme Court decision establishing the controlling principle.

## V. CONCLUSION

■ The instant case is clearly within the *Younger* and *Hicks* line of cases. Abstention is clearly required as to plaintiff Marsico since he is the subject of pending state criminal proceedings. Abstention is also required as to plaintiff Graff. There is no indication in the pleadings that as an employee-projectionist he served in anything other than a traditional agency capacity to his employer who will have an adequate opportunity to vindicate constitutionally guaranteed rights in his criminal defense in the state court. We believe this result is consistent with traditional notions of comity and federalism which dictate that Graff should be foreclosed, at this time, from proceeding in federal court on an issue of strong local concern which is most appropriately resolved by state rather than federal courts and which is the subject of a pending state prosecution. Furthermore, since the complaint does not allege that Graff exercised management or control over the films which he projected, we fail to see how *his* First Amendment interests are at stake. As a projectionist, he is not exercising the constitutionally guaranteed freedom to express his views—he merely runs the film through the projector. Since the complaint alleges only that Graff was arrested but never prosecuted and does not allege that he has been subjected to multiple arrests or

threatened prosecutions, as required by both *Younger,* 401 U.S. at 42, 91 S.Ct. 746, and *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), we fail to see how *his* right to pursue his livelihood is at stake. Accordingly, we find that Graff is precluded from pursuing this matter in federal court at this time since the capacity in which he served as Marsico's employee renders them legally indistinct parties for *Younger* purposes.

Finally, there is no evidence of bad faith or harassment which would obviate the application of *Younger* and its progeny to this case.

An appropriate order will enter.

## OUTDOOR MOVIE THEATER

### ORDINANCE

(Ch. 14–47 *et seq*)

Be it Enacted by the People of the County of Cook, Represented in the Cook County Board:

14–47.] That no citizen, firm or corporation of this State shall operate a public outdoor movie theater used for public viewing of motion pictures or other film presentations in the County of Cook, and outside the limits of any city, town, or village, without first having obtained an outdoor movie theater license for each location.

14–48.] That applications for outdoor movie theater licenses shall be made on forms provided by the President of the Board of Commissioners of Cook County, and shall be made to the Board of Commissioners of Cook County, and at the time application is made the applicant shall pay the sum of one hundred dollars for the whole or any portion of the license period hereby established.

14–49.] That every license issued by the Board of Commissioners of Cook County shall be valid for a period of one year from the first day of May to the Thirtieth day of April following, unless sooner revoked under the provisions of this ordinance, and shall be subject to all laws, resolutions and

832

regulations now in force and effect, or which may be hereafter enacted, adopted or approved, relating to outdoor movie theaters used for public viewing of motion pictures, or other film presentations.

14–50.] That a license for every location, place or premise licensed under the terms and by virtue of the above provisions, shall be framed and hung in plain view in a conspicuous place upon the premise so licensed.

14–51.] That application for outdoor movie theater licenses shall contain, under oath of the applicant, the name, address and residence of the applicant and owner, and the length of time that they or he has resided at that residence, and the location of the place or building where the applicant intends to operate or maintain the outdoor movie theater.

14–52.] That the terms "person or persons" used in this resolution, shall include and mean individuals, firms, partnerships or corporations and that the term "Cook County" as used in this resolution shall include and mean all that territory within the geographical limits of the County of Cook, State of Illinois, which is not within the corporate limits of any city, town or village.

14–53.] That every applicant for a license shall covenant and agree:

(1) To keep the premises free at all times from the presence of disorderly persons, and to prevent any immoral practices thereon;

(2) To prevent the violation upon the premises licensed of any law or ordinance, federal, state or county;

(3) To desist from exhibiting any motion picture or film presentation containing any scene or scenes of sexually explicit nudity including but not limited to acts or simulated acts of sexual intercourse, masturbation, oral copulation, actual or simulated touching, caressing or fondling of female breasts and male or female buttocks, anus or genitals; and actual or simulated display of erect male genitalia when such motion picture or film presentation is viewable from any

private residence or any public street or walkway.

(4) To refuse admittance of all minors un-accompanied by their parents or guardians to motion pictures or film presentations as described in paragraph (3) above.

(5) That any misstatements made by the applicant or any violation of the terms and conditions of the application, or of any of the laws, statutes, ordinance, rules, regulations and covenants above described, shall be cause for revocation by the President of the Board of County Commissioners of Cook County, of the license applied for or received.

14–54.] Severability Clause—If any provision of this ordinance or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the ordinance which can be given effect without the invalid provision or application, and to this end the provisions of this ordinance are severable.

14–55.] This ordinance shall become in full force and effect upon passage.

Submitted by Harold L. Tyrrell, Member
Board of Commissioners
of Cook County
March 6, 1978