**Timothy J. SCHULER, and David T. Strode, Plaintiffs,**

v.

**The CITY OF CHAMBERSBURG, PA., et al., Defendants.**

Civ. A. No. 86–0580.

United States District Court, M.D. Pennsylvania.

Aug. 15, 1986.

Timothy John Schuler, pro se, and for plaintiffs.

David R. Weyl, Howland W. Abramsson, Philadelphia, Pa., for Meminger and Stover.

Thomas J. Finucane, Wingerd and Long, Eileen F. Schoenhofen, Chambersburg, Pa., for defendants Borough of Chambersburg, Robert Morris, Michael DeFrank, G.R. Mayer, III, Mark Christman, David A. Dennick, John Phillippy and Larry Ott.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Two of the defendants, Larry K. Meminger and J. William Stover, Pennsylvania District Justices located in Franklin County, have moved to dismiss the *pro se* plaintiffs' civil rights complaint, claiming judicial immunity. Additionally, the plaintiffs, Timothy J. Schuler and David T. Strode, have renewed their request for injunctive relief prohibiting defendants from prosecuting them on disorderly conduct charges arising from plaintiffs' activities on the streets of Chambersburg, Pennsylvania, as self-styled "street preachers." We had preliminarily denied the request for injunctive relief in an order, dated April 25, 1986, but thereafter, in an order, dated June 27, 1986, preparatory to a renewed consideration of the request, we required the parties to brief the issue of the propriety of injunctive relief. We advised plaintiffs to marshall all the facts they believed supported such relief. The parties have briefed both motions and they are ripe for disposition.

### II. *Factual Background.*

The plaintiffs' complaint arises from their arrest on several occasions for disorderly conduct under Pennsylvania law[1] while they were preaching in public areas of Chambersburg. The first arrests occurred on March 29, 1986, when plaintiffs were preaching on the Chambersburg Square. Defendant Mayer, an officer on the Chambersburg police department, told Schuler that he had complaints from undisclosed members of the public and that Schuler would have to stop preaching at the volume he was using. Schuler replied that he had a constitutional right to preach. Thereafter, Mayer arrested him for disorderly conduct. He was placed in defendant Christman's police car, taken to police headquarters, and fingerprinted by defendant Phillippy. He was then arraigned before defendant, District Justice Stover who

placed a condition on his bond that he refrain from making loud noises.

On the same day plaintiff Strode was informed that he would be receiving a citation in the mail for disorderly conduct. On April 22, 1986, Strode was arraigned before Stover and placed under a bond containing conditions similar to Schuler's.

On April 7, 1986, Schuler was once again preaching. Defendant Demmick, a police officer, approached him and reminded him of an agreement with Chief DeFrank that Schuler would move on after preaching in one location for thirty minutes. Schuler moved on but defendant Ott cited him for violation of his bond. Schuler moved on again and was arrested by Demmick and Officer Ott. He was arraigned before defendant Meminger and was kept in Franklin County Prison until 3:00 p.m. the next day when a sympathetic stranger posted a bond meeting the conditions required by Magistrate Meminger.

Plaintiffs then filed a second complaint which added two new defendants, District Justices John Omett and David Hawbaker, and also described a subsequent arrest. On July 4, 1986, Schuler was preaching at a band shell following the completion of a gospel concert given by the Open Door Church Choir. Officer Bernard Clapper arrested him for disorderly conduct. Plaintiff was confined in the Franklin County Prison until 2:00 p.m. on July 7, 1986.

In their brief in support of their request for injunctive relief, plaintiffs have set forth other arrests. On April 7, 1986, as well as being arrested as previously described, Schuler was given a citation for a separate offense. He was cited on May 16, 1986, and arrested on May 24, 1986. Strode was cited on May 16, 1986 and Richard Hicks, a member of Schuler's congregation, who also engaged in preaching, was arrested on May 24, 1986.

Plaintiffs have charged defendants with an attempt "to get" Timothy Schuler, pastor of the Christian Bible Church, and "the leader." They also are allegedly trying to

**1.** 18 Pa.C.S. § 5503.

659

suppress the plaintiffs' teaching of their religious beliefs. Plaintiffs point out that they have been preaching in public areas such as sidewalks and parks and have reminded defendants constantly of plaintiffs' rights under the first and fourteenth amendments. Yet there have been a number of arrests, citations, prison confinements and fines. There also appears to have been selective enforcement of the statute. Schuler has apparently been singled out by the defendants. For example, on March 29, 1986, when Schuler was arrested, Strode was only given a citation. And on May 24, 1986, Ted and Tom Strode, other members of the Church, were permitted to preach for over an hour when Timothy Schuler and Hicks were arrested, and cited, respectively.

Plaintiffs request that we enjoin the defendants from continuing with past, present and any contemplated future prosecutions. They wish to litigate the constitutionality of their arrests in this federal forum before defendants are permitted to proceed with the state criminal prosecutions.

## III. *Discussion.*

### A. *The Judicial Defendants' Motion to Dismiss Based Upon Judicial Immunity.*

■ The defendant district justices, Larry K. Meminger and J. William Stover, have moved to dismiss the complaint based upon the doctrine of judicial immunity. That doctrine provides that judges may not be sued for actions taken in their judicial capacities unless there is a clear absence of jurisdiction. Immunity may be invoked even if the conduct was in excess of their jurisdiction and done maliciously and corruptly. *See Humphrey v. Court of Common Pleas of York County,* 640 F.Supp. 1239 (M.D.Pa.1986) (Caldwell, J.) (citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct.

1099, 55 L.Ed.2d 331 (1979)). Plaintiffs contend that the defendants exceeded their jurisdiction in setting unconstitutional conditions on their bonds and in refusing to recognize plaintiffs' constitutional claims when brought before defendants for arraignment. We conclude, however, that these were actions taken within the defendants' judicial capacities and not in the clear absence of jurisdiction. Even the allegations of bias will not defeat defendants' immunity. *See Humphrey, supra.* The claims against Meminger and Stover will be dismissed with prejudice.[2]

### B. *Plaintiffs' Request for Injunctive Relief.*

■ At the outset of our discussion of this claim, we will note what we perceive to be a misunderstanding on the part of the plaintiffs concerning the extent of their right under the first amendment to preach in the public areas of Chambersburg. Plaintiffs seem to believe that that right is absolute and that they may ignore any laws while they are engaged in such activity. That view would be erroneous. The Supreme Court touched on the issue in *Heffron v. International Society For Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). There, the religious body, ISKON, challenged the regulation governing the distribution and sale of literature at a state fair. In passing on the constitutionality of the regulation the Court noted that:

The State does not dispute that the oral and written dissemination of the Krishnas' religious views and doctrines is protected by the First Amendment. [citations omitted] Nor does it claim that this protection is lost because the written materials sought to be distributed are sold rather than given away or because contributions or gifts are solicited in the course of propagating the faith. Our

**2.** We recognize that judicial immunity does not bar prospective injunctive relief against a judge, *see Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), but here injunctive relief against the remaining defendants would provide plaintiffs with complete relief so that it is appropriate to dismiss the judicial defendants from this action. *See R.W.T. v. Dalton,* 712 F.2d 1225 (8th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

cases indicate as much. [citations omitted]

It is also common ground, however, that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *Adderley v. Florida*, 385 US 39, 47–48, 17 L Ed 2d 149, 87 S Ct 242 [247–48] (1966); *Poulos v. New Hampshire*, 345 US 395, 405, 97 L Ed 1105, 73 S Ct 760, [766] 30 ALR2d 987 (1953); *see Cox v. Louisiana*, 379 US 536, 554, 13 L Ed 2d 471, 85 S Ct 453 [464] (1965). As the Minnesota Supreme Court recognized, the activities of ISK-CON, like those of others protected by the First Amendment, are subject to reasonable time, place, and manner restrictions. [citations omitted]

*Id.* at 647, 101 S.Ct. 2563–64, 69 L.Ed.2d at 306 (brackets added). *See also Pennsylvania Public Interest Coalition v. York Township*, 569 F.Supp. 1398 (M.D.Pa.1983). Hence, plaintiffs' activities are subject to state control and the mere fact that they have been cited or arrested for violations of the penal code while they have been engaged in constitutionally protected activity does not establish that the defendants acted improperly. Against this backdrop, we will dispose of plaintiffs' request for injunctive relief.

We acknowledge that plaintiffs are invoking an important constitutional right. But whether or not the plaintiffs have been unconstitutionally hampered in expressing their religious views on the streets of Chambersburg is not directly before us. Plaintiffs may be absolutely correct in that assertion and, certainly, they should raise that defense in state court proceedings. The issue presented to us by plaintiffs' request is different, and that is whether we should prohibit state criminal proceedings from moving forward or prevent state actors from exercising ordinary and appropriate authority in initiating criminal prosecutions in the future.

■ In our previous orders we stressed the extraordinary nature of plaintiffs' request.[3] As we also previously stated, a federal district court should generally abstain from enjoining ongoing state criminal proceedings. As stated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669, 675 (1971), there are compelling reasons for abstention:

One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.... This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

An exception to this rule exists when "a state prosecution is brought in bad faith or for purposes of harassment." *Matter of Davis*, 691 F.2d 176, 178 (3d Cir.1982).

Plaintiffs rely upon this exception in claiming that injunctive relief is appropriate here. They allege that bad faith and harassment exists from the number of arrests, citations, imprisonments and fines. They also point to what they perceive as selective enforcment of the disorderly conduct law against Timothy Schuler, pastor of the Church.

■ We conclude that plaintiffs' allegations fail as a matter of law to establish their right to injunctive relief at this time. When courts have been faced in the past

---

**3.** We should also note that at the time of the first complaint plaintiffs had not even been tried on any of the charges.

with requests that they enjoin state criminal proceedings, they have usually required a series of unsuccessful prosecutions before granting injunctive relief. In *Grandco Corp. v. Rochford,* 536 F.2d 197 (7th Cir.1976), the court of appeals held that injunctive relief against one of the plaintiffs, Wabash Books, Inc., was inappropriate when plaintiff had only shown that it had been prosecuted some 100 times under the challenged state statute. The court compared the situation to *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and *Krahm v. Graham,* 461 F.2d 703 (9th Cir.1972), cases in which injunctions were issued after multiple unsuccessful prosecutions, and stated as follows:

In *Dombrowski* and *Krahm,* harassment and bad faith were inferred from evidence of multiple *unsuccessful* prosecutions. In the case at bar, prosecutions against the manager of plaintiff Wabash Books' enterprise have generally resulted in convictions. Continued prosecution under the ordinance for repeated violations indicates only good faith enforcement of a judicially approved provision against judicially disapproved conduct. The evidence of multiple prosecutions will not support an inference in this case of official bad faith or improper motive.

*Id.* at 204 (emphasis in original).

The court concluded that plaintiff's remedy was defending the state court prosecutions and appealing any adverse decision through orderly appellate channels, noting that a federal district court was not a substitute for the state appellate process. *See also, Black Jack Distributors, Inc. v. Beame,* 433 F.Supp. 1297 (S.D.N.Y.1977) (multiplicity of prosecutions alone does not show bad faith or harassment).

A similar result was reached in *United Books, Inc. v. Conte,* 739 F.2d 30 (1st Cir. 1984). There, plaintiff had been charged six times under a Massachusetts obscenity statute and sought an injunction against future prosecutions, arguing that the past prosecutions constituted sufficient harassment to avoid the general rule of *Younger, supra.* The court of appeals disagreed, noting that:

On the facts of this case—six prosecutions over a two year period—we cannot say that the *Younger* exceptions have been satisfied. [citing *Grandco Corp. v. Rochford, supra* ]. Certainly the record in this case is not nearly so extreme as those where courts have found the *Younger* exceptions satisfied. *See, e.g., Krahm v. Graham,* 461 F.2d 703 (9th Cir.1972) (finding "bad faith" sufficient to justify federal intervention where 90 prosecutions were still pending against the plaintiffs under the state's anti-obscenity law despite their acquittal in the eleven prosecutions previously adjudicated.)

*Id.* at 34 (brackets added).

The situation here is similar. Plaintiffs have established here only that they have been subject to multiple prosecutions. Although it is unclear how many have resulted in convictions, plaintiffs have been unable to represent that any have resulted in acquittals.[4] Under these circumstances, we will not enjoin the defendants from continuing prosecutions or instituting new ones.

Plaintiffs' claim is not bolstered by their contention that Timothy Schuler has been singled out for prosecution. In connection with that argument, they have noted that Schuler was arrested on one occasion while at the same time plaintiff Strode was merely given a citation. Additionally, they have pointed out that Ted and Tom Strode were allowed to preach without a confrontation one time while Timothy Schuler and Hicks were arrested. In our view, these contentions, rather than supporting a claim of harassment, negate it. For they indicate that defendants, rather than trying to suppress constitutionally protected activity, have no interest in suppressing that activi-

4. Plaintiffs have noted generally that fines were imposed and District Justice Omett did find plaintiff, Timothy Schuler, guilty of the charges filed against him arising from the March 29, 1986 incident. We can therefore conclude that some convictions have taken place.

ty as long as no penal laws are violated. *See Marsico v. Elrod,* 469 F.Supp. 825 (N.D.Ill.1979) (arrest of owner of drive-in movie theatre and an employee, but prosecution only of owner, does not establish bad faith but rather good faith in enforcing the ordinance only against the actual source of the violation).

We will issue an appropriate order.[5]

---

**5.** In *Wooley v. Maryland,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the Supreme Court held that *Younger* did not apply to a suit seeking injunctive and declaratory relief against prosecution for future violations of a state statute when plaintiffs did not seek to nullify the effects of prior prosecutions and convictions. *Wooley* is not apposite here because plaintiffs have not established that state prosecutions are still not pending against them, or that they are not currently appealing any conviction, or that they are willing to accept the full consequences of past prosecutions.